FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 10, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER J.,[1] <br>            Plaintiff, <br><br>    vs. <br><br> COMMISSIONER OF SOCIAL <br> SECURITY, <br>            Defendant. | No. 4:18-cv-05085-MKD <br><br> ORDER GRANTING PLAINTIFF'S <br> MOTION FOR SUMMARY <br> JUDGMENT AND DENYING <br> DEFENDANT'S MOTION FOR <br> SUMMARY JUDGMENT <br><br> ECF Nos. 15, 16 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 4. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 15, and denies Defendant's motion, ECF No. 16.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ORDER - 2

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

from "any impairment or combination of impairments which significantly limits

[his] physical or mental ability to do basic work activities," the analysis proceeds

to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not

satisfy this severity threshold, however, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

ORDER - 4

activities on a sustained basis despite his limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

If the claimant is found disabled at any point in this process, the ALJ must also determine if the disability continues through the date of the decision. The Commissioner has established a multi-step sequential evaluation process for determining whether a person's disability continues or ends. 20 C.F.R. § 404.1594. This eight-step medical-improvement process is similar to the five-step sequential evaluation process used to evaluate initial claims, with additional attention as to whether there has been medical improvement. *Compare* 20 C.F.R. § 404.1520 *with* § 404.1594(f). Step one determines whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in 20 C.F.R. pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1594(f)(2). If the impairment does not meet or equal a listed impairment, the second step addresses whether there has been medical improvement in the claimant's condition. 20 C.F.R. § 404.1594(f)(3). Medical improvement is "any decrease in the medical severity" of the impairment that was present at the time the individual was disabled. 20 C.F.R. § 404.1594(b)(1).

If there has been medical improvement, at step three, it is determined whether such improvement is related to the claimant's ability to do work–that is,

whether there has been an increase in the claimant's residual functional capacity. 20 C.F.R. § 404.1594(f)(4). If there has been no medical improvement or medical improvement is not related to the claimant's ability to work, the evaluation proceeds to step four, which assesses whether certain exceptions apply. 20 C.F.R. § 404.1594(f)(5). If there has been medical improvement, the Commissioner skips to step five and inquires whether all of the claimant's current impairments in combination are severe, that is, whether they impose more than a minimal limitation on the claimant's physical or mental ability to perform basic work activities. 20 C.F.R.§ 404.1594(f)(6).

If the step-five finding is that the claimant's current impairments are not severe, the claimant is no longer considered to be disabled. *Id.* If the step-five finding is that the claimant's current impairments are severe, at step six, a residual functional capacity finding is made, and it is determined whether the claimant can perform past relevant work. 20 C.F.R. § 404.1594(f)(7).

Finally, at step seven and eight, if the claimant cannot perform past relevant work, the Commissioner must prove there is alternative work in the national economy that the claimant can perform given his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1594(f)(8). If the claimant cannot perform a significant number of other jobs, he remains disabled despite

ORDER - 7

medical improvement; if, however, he can perform a significant number of other jobs, disability ceases. *Id.*

## ALJ'S FINDINGS

On July 4, 2014, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of July 25, 2005. Tr. 203-04. The application was denied initially, Tr. 119-21, and on reconsideration, Tr. 125-29. Plaintiff appeared before an administrative law judge (ALJ) on May 24, 2017. Tr. 50-93. On July 31, 2017, the ALJ granted Plaintiff's claim for benefits from July 25, 2005, through December 31, 2009, and denied Plaintiff's claim for benefits from January 1, 2010, through July 31, 2017, the date of the ALJ's decision. Tr. 14-43.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, July 25, 2005. Tr. 21. At step two, the ALJ found that Plaintiff has the following severe impairments: major joint dysfunction, degenerative disk disease, obesity, affective disorder, and anxiety disorder. Tr. 22, 28.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 22, 29. The ALJ then found that from July 25, 2005, through December 31, 2009, Plaintiff had the RFC to perform sedentary work with the following abilities:

> to lift and carry 10 pounds occasionally, and less than 10 pounds
> frequently; sit six hours in an eight hour workday; stand and walk
> two hours in an eight hour workday with normal breaks;
> occasionally climb ramps and stairs, but never ladders, ropes, or
> scaffolds; occasionally balance, stoop, bend, squat, kneel, and
> crouch; never crawl; and must avoid extremes of cold, wetness,
> vibration, and hazards in the workplace. [Plaintiff] is able to
> perform the basic mental demands of competitive, unskilled work,
> including the abilities to: understand, remember, and carry out
> simple instructions; respond appropriately to supervision, co-
> workers, and usual work situations; and deal with changes in a
> routine work setting. He can have no more than frequent interaction
> with supervisors, co-workers, and the general public. He is unable to
> work 40 hours per week on a regular and sustained basis and will be
> absent from the workplace eight or more weeks per year while
> undergoing and recovering from surgery.

Tr. 24. At step four, the ALJ found that from July 25, 2005, through December 31, 2009, Plaintiff was unable to perform any past relevant work. Tr. 27. At step five, the ALJ found that from July 25, 2005, through December 31, 2009, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 28.

The ALJ then considered whether the disability continued from July 25, 2005, through the date of the ALJ's decision. At step one of the medical-improvement analysis, the ALJ found Plaintiff's severe impairments were the same as those present from July 25, 2005, through December 31, 2009. Tr. 28. At step two, the ALJ found Plaintiff did not have an impairment or combination of

ORDER - 9

impairments that met or medically equaled the severity of a listed impairment.  Tr. 29.  The ALJ then found that, due to medical improvement beginning January 1, 2010, Plaintiff had the RFC to perform sedentary work with the following abilities:

> lift and carry 10 pounds occasionally, and less than 10 pounds frequently; sit six hours in an eight hour workday; stand and walk two hours in an eight hour workday with normal breaks; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; occasionally balance, stoop, bend, squat, kneel, and crouch; never crawl; and must avoid extremes of cold, wetness, vibration, and hazards in the workplace.  [Plaintiff] is able to perform the basic mental demands of competitive, remunerative, unskilled work, including the abilities to: understand, remember, and carry out simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting.  He can have frequent interaction with supervisors, co-workers, and the general public.

Tr. 30.  The ALJ found Plaintiff's impairments to be related to work abilities, and at step five, the ALJ found Plaintiff's impairments continued to be severe.  Tr. 29-30.  At step six, the ALJ found that since January 1, 2010, Plaintiff was still unable to perform any past relevant work.  Tr. 37.  At step seven and eight, the ALJ found that, considering Plaintiff's age, education, work experience, RFC since January 1, 2010, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, touch-up screener, table worker, and wafer breaker semiconductor.  Tr. 37.  Therefore, the ALJ found that Plaintiff was not under a disability, as defined in the

Social Security Act, from January 1, 2010, though the date of the July 31, 2017 decision.  Tr. 37.

On April 11, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

3.  Whether the ALJ properly evaluated the lay witness statements; and

4.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 15 at 10.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ improperly discounted the psychiatric opinions of James Babington, M.D.; Jon Berner, M.D. and Ph.D.; and Owen Bargreen, Psy.D. ECF No. 15 at 11-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Babington

From 2012 to 2017, Dr. Babington, a pain management doctor, treated Plaintiff for his injuries resulting from a July 25, 2005 work injury and determined that Plaintiff had a history of left knee injury, status post-surgery, with degenerative arthritis and psychiatric conditions. Tr. 880-87, 958, 976, 1058-59. In January 2015, for Washington State Department of Labor and Industries' ("Labor and Industries") purposes, Dr. Babington opined that Plaintiff could physically participate in a medical technician position but that it was "doubtful from a psychiatric perspective [Plaintiff] would be able to participate without significant anxiety and inability to complete the training program," and deferred to Dr. Berner about Plaintiff's psychiatric treatment and when Plaintiff might be "fixed and stable in that regard." Tr. 950.

In September 2016, again for Labor and Industries' purposes, Dr. Babington opined that Plaintiff was "not capable of working on a full time regular continuous basis due to his industrial injury conditions" and found there were no further curative treatment measures for Plaintiff and that a formal psychological and

physical treating examination was needed to determine if Plaintiff was at "maximum medication improvement" for Labor and Industries' purposes. Tr. 1057.

In March 2017, Dr. Babington opined that Plaintiff was restricted to sedentary work due to his multiple knee surgeries and degenerative process and he deferred an opinion as to Plaintiff's psychiatric condition and whether Plaintiff was at "maximum medical improvement" for Labor and Industries' purposes to psychiatrist Dr. Berner. Tr. 1059.

The ALJ assigned minimal weight to Dr. Babington's January 2015 opinion, Tr. 36-37 (citing Tr. 950), little weight to Dr. Babington's September 2016 opinion, Tr. 35 (citing Tr. 1057), and assigned some weight to Dr. Babington's March 2017 opinion, Tr. 35 (citing Tr. 1058-59). To the extent Dr. Babington's opinions were inconsistent with the evaluating opinions of Dr. Rebecca Fischer, Tr. 867-921, and Dr. Russell Vandenbelt, Tr. 837-49, who opined that Plaintiff was able to work on a full-time basis, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Babington's opinions. *See Bayliss*, 427 F.3d at 1216.

      i.    2015 Opinion

First, the ALJ discounted Dr. Babington's 2015 opinion because it was unexplained and unsupported by the record. Tr. 36-37. A medical opinion may be

ORDER - 14

rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). An ALJ may permissibly reject opinions if they do not contain any explanation of the bases for their conclusions and are not supported by treating notes. *Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). Here, the ALJ found that Dr. Babington's observations and mental-status testing did not support his 2015 opinion. Tr. 36-37. Dr. Babington's January 2015 clinic indicated that, although Plaintiff was alert and orientated, he was irritable and continued to receive ongoing psychiatric treatment from Dr. Berner. Tr. 949-50. While this clinic note by itself would likely support the ALJ's finding, the record also contains summaries of Dr. Babington's treatment notes for the three years before he issued this January 2015 opinion. These clinic-note summaries indicate that Plaintiff experienced anxiety and depression to such extent that Dr. Babington sought Dr. Berner's professional psychiatric opinion. *See, e.g.*, Tr. 880-84, Tr. 887 (noting that Plaintiff's anxiety and depression had recently worsened due to physical conditions); Tr. 908 (noting that Plaintiff continued to have a fair amount of anxiety that was limiting some of his activities); Tr. 909 (noting that Plaintiff's anxiety and depression had been a significant problem and referring Plaintiff back to Dr. Berner for assistance in managing Plaintiff's psychiatric symptoms); Tr. 910

(requesting that Labor and Industries urgently authorize a consultation with psychiatry). In addition, Dr. Babington's post-January 2015 clinic notes indicate that Plaintiff continued to have psychiatric difficulties. For instance, in June 2015, Dr. Babington observed Plaintiff as irritable and agitated and he noted that Plaintiff left the room before the examination was finished because he was frustrated. Tr. 991-92; *see also* Tr. 947 (March 2015: noting that Plaintiff appeared mildly disheveled, with a constrained affect, and "quite honesty, [Plaintiff] appears the worst I have seen him since we established care. I am concerned regarding his mood symptoms and inability to progress much further from where his current state is."); Tr. 993-94 (Apr. 2015: deferring psychiatric treatment until further surgical options for the right knee were addressed); Tr. 952 (July 2015: noting that Plaintiff was too irritable to be examined); Tr. 1058-59 (March 2017: noting that Plaintiff was irritable, agitated, and frustrated). Dr. Babington also encouraged Plaintiff to apply for disability. Tr. 947. Moreover, Dr. Babington's observations that Plaintiff suffered psychiatrically were consistent with other providers' observations. *See, e.g.*, Tr. 905-06 (2012: Dr. Cecilia Beer noted that Plaintiff was crying during an appointment and continued with depression and anxiety symptoms.); Tr. 908 (Oct. 2013: Dr. Niriksha Maliadi observed Plaintiff to have difficulty maintaining concentration and focus as he presented as tangential at times.); Tr. 965 (March 17, 2015: Dr. Peter Mandt noted that Plaintiff "seemed

somewhat 'out of it' today and was very incomplete with respect to his answers and vague with respect to his recent treatments."). Even Dr. Berner and Dr. Fischer acknowledged that Plaintiff likely suffered from panic and agoraphobic symptoms before the 2005 work injury. Tr. 934 ("I think it is reasonable to assume that an industrial injury would certainly destabilize a stable individual to some degree. I think it is reasonable to assume that his pre-existing psychiatric illness is a barrier to re-employment."); Tr. 918 ("Although on interview [Plaintiff] stated that he had not experienced psychiatric symptoms or treatment prior to his July 25, 2005 industrial injury, review of medical records indicates that he in fact had pre-existing panic and agoraphobic symptoms. It appears that he was experiencing significant panic symptoms in high school which led to him leaving it and it is my opinion that these symptoms likely continued through his 20's."); *see also* Tr. 998-1002 (recognizing in 2006 that Plaintiff's anxiety and mood were dependent on his physical condition and pain level). Dr. Fischer also recommended in August 2014 that Plaintiff continue under the psychiatric care of Dr. Berner. Tr. 920. On this record, the ALJ's finding that Dr. Berner's 2015 opinion—that Plaintiff's psychiatric conditions prevented him from completing a medical-technician program—was unexplained and unsupported is not based on substantial evidence.

Second, the ALJ discounted Dr. Babington's 2015 opinion because Dr. Babington refused to continue to prescribe Plaintiff's medications and instead

deferred to Dr. Berner. Tr. 37 (citing Tr. 1053). The ALJ may discount a physician's opinion that is inconsistent with the conservative nature of the claimant's treatment. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). "Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). In addition, while the ALJ may give more weight to a specialist's opinion, it is error for the ALJ to reject a treating physician's opinions solely based on this reasoning. *Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987); 20 C.F.R. § 404.1527(c)(5). Here, the ALJ relied on a statement in a clinic note prepared by Dr. Mark Tomski in October 2015—that Dr. Babington was "no longer willing to" prescribe Plaintiff's medications—to discount Dr. Babington's opinion.[2] Tr. 1053. A full review of

_____

[2] In relation to Dr. Tomski, the ALJ also stated, "[t]he only other appointment in the record [after Dr. Tomski's October 2015 appointment] is a clinic note from Dr. Babington dated from March 2017. Tr. 32. But in addition to Dr. Babington's March 2017 clinic note, the record contains Dr. Babington's January 4, 2016 clinic note, Tr. 989, and Dr. Berner's March 14, 2016 clinic note, Tr. 954—both after Dr. Tomski's October 2015 appointment. *See also* Tr. 953 (containing Dr. Berner's March 8, 2016 note regarding discussion with Labor and Industries' pharmacist).

ORDER - 18

the record reveals that Dr. Babington's decision to cease prescribing Plaintiff's

psychiatric medications was based on the Department of Labor and Industries'

policy that required Dr. Berner, a licensed psychiatrist, to manage Plaintiff's

psychiatric medications. Tr. 502-04 (The Department "authorized a psychiatric

evaluation with Dr. Berner because psychiatric treatment and medication

management, must be administered by a psychologist and/or psychiatrist."); *see*

*also* Tr. 844 (Dr. Vandenbelt recommended that Plaintiff's medication be managed

by a psychiatrist given "the complexity of his clinical picture and the significantly

greater likelihood that a psychiatrist will be familiar with treatment options and

dosages."); Tr. 906 (Dr. Beer deferred psychiatric medications to Dr. Berner.); Tr.

920 (Dr. Fischer recommended that Plaintiff continue under the care of psychiatrist

Dr. Berner.). Moreover, there was a recognized danger of an iatrogenic injury

resulting from medication mismanagement if multiple providers prescribed

Plaintiff's psychiatric medications. Tr. 953; *see also* Tr. 878, 903-06 (reporting

side effects from medications). Thus, while it is reasonable for the ALJ to consider

the opinion of a treating specialist, such as Dr. Berner, over a general provider,

such as Dr. Babington, on this record, that Dr. Babington ceased prescribing

Plaintiff's medications and deferred to Dr. Berner for Plaintiff's psychiatric

treatment was not a legitimate reason supported by substantial evidence to discount

ORDER - 19

Dr. Babington's opinion—an opinion that was consistent with Dr. Babington's clinic notes.

Third, the ALJ found Dr. Babington's 2015 opinion inconsistent with Dr. Berner's subsequent opinion that Plaintiff was at "maximum medical improvement." Tr. 36 (citing Tr. 952). An ALJ may discredit a physician's opinion that is unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Here, the ALJ relied on Dr. Berner's determination that Plaintiff was at "maximum medical improvement" to discount Dr. Babington's opinion that Plaintiff could not complete the medical technician program due to his psychiatric conditions. Tr. 36. However, the ALJ failed to recognize that "maximum medical improvement" is a term of art used in Labor and Industries' proceedings and it does not correlate to a finding that the patient has no functional limitations resulting from the condition, which is at maximum medical improvement. WAC 296-20-01002 specifies:

> The department or self-insurer stops payment for health care services once a worker reaches a state of maximum medical improvement. Maximum medical improvement occurs when no fundamental or marked change in an accepted condition can be expected, with or without treatment. Maximum medical improvement may be present though there may be fluctuations in levels of pain and function. A worker's condition may have reached maximum medical improvement though it might be expected to improve or deteriorate with the passage of time. Once a worker's condition has reached maximum medical improvement, treatment that results only in temporary or transient changes is not proper and

ORDER - 20

necessary. "Maximum medical improvement" is equivalent to "fixed and stable."

WAC 296-20-01002.  Pursuant to this regulation, Dr. Berner found that Plaintiff had reached maximum medical improvement "relative to" Labor and Industries' "approved formularies."  Tr. 1061; *see also* Tr. 938 (Dr. Berner noted that treatment was limited by "numerous administrative constraints."); Tr. 952 (recognizing that Bumex was nonformulary); Tr. 953 (recognizing that Labor and Industries would only pay for Baclofen for sixty days).  Dr. Berner's findings and opinions were to be considered in light of the fact that they were made for purposes of Plaintiff's Labor and Industries' claim.  On this record, it was not a legitimate reason to discount Dr. Babington's opinion—that Plaintiff could not sustain his participation in the medical technician program because of his psychiatric limitations—because Dr. Berner opined that Plaintiff was at maximum medical improvement.

Finally, the ALJ noted that Dr. Babington's January 2015 opinion was consistent with the vocational expert's testimony.  Tr. 37.  An ALJ need not provide reasons for rejecting a physician's opinion where the ALJ incorporated the opined limitations into the RFC and the identified jobs were based on the RFC. *Turner v. Comm'r, Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010).  Here, the ALJ highlighted that the positions identified by the vocational expert involved unskilled work—work that did not require a training program—and therefore the

ORDER - 21

ALJ deemed Dr. Babington's opinion—that Plaintiff was psychiatrically unable to complete the medical technician training—as consistent with jobs identified by the vocational expert. Tr. 37. Construing Dr. Babington's opinion, which was offered for the purpose of determining whether Plaintiff could participate in the Labor and Industries' training program, as consistent with a finding that Plaintiff could perform unskilled work on a sustained basis is unreasonable on this record.

In summary, the ALJ erred by failing to offer legitimate reasons supported by substantial evidence for discounting Dr. Babington's 2015 opinion.

ii.    2016 Opinion

The ALJ discounted Dr. Babington's 2016 opinion that Plaintiff was incapable of a full-work schedule because the opinion was unexplained and unsupported. Tr. 35 (citing Tr. 1057). Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An ALJ may permissibly reject opinions if they do not contain any explanation of the bases for their conclusions and are not supported by treating notes. *Trevizo*, 871 F.3d at 667 n.4; *Garrison*, 759 F.3d at 1014 n.17; *Crane*, 76 F.3d at 253. Here, the ALJ found 1) there were no reasons provided by Dr. Babington for his 2016 check-box

opinion and 2) the opinion was not supported by the attached clinic note, which was prepared after the opinion. Tr. 35 (citing Tr. 1057-59). While the conclusory nature of an opinion may serve as a specific and legitimate basis to discount an opinion, as discussed *supra*, Dr. Babington's clinic notes contained observations and findings that support an opinion that Plaintiff was unable to sustain full-time work due to his psychiatric conditions. *See, e.g.*, 880-84, 887, 908-910, 991-94, 947, 952. Moreover, the subsequent March 16, 2017 clinic note was not inconsistent as it indicated that Plaintiff was irritable, frustrated, and agitated. Tr. 1058-59. On this record, the ALJ's finding that Dr. Babington's 2016 opinion was unexplained and unsupported is not based on substantial evidence.

Second, the ALJ found Dr. Babington's 2016 opinion inconsistent with Dr. Babington's March 16, 2017 clinic-note opinion. Tr. 35. Incongruity between a doctor's medical opinion and treatment records or notes is a specific and legitimate reason to discount a doctor's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ found that Dr. Babington's opinion in his March 2017 clinic note—that Plaintiff was "restricted to a sedentary level of work on a full time basis," Tr. 1058-59—was inconsistent with his 2016 opinion that Plaintiff was unable to sustain work. However, Dr. Babington's 2016 form and 2017 treatment note must be read in their context. *See Holohan*, 246 F.3d at 1205. Dr. Babington's 2016 opinion encompassed both Plaintiff's physical and psychiatric

ORDER - 23

conditions, whereas his March 2017 treatment-note opinion distinguished between Plaintiff's physical conditions, for which Dr. Babington opined that Plaintiff was restricted to sedentary work, and Plaintiff's psychiatric conditions, for which Dr. Babington deferred to Dr. Berner for a Labor and Industries' assessment. Tr. 1057-59. Accordingly, on this record, the ALJ's finding that Dr. Babington's 2016 opinion and 2017 opinion were inconsistent is not supported by substantial evidence.

Third, the ALJ discounted Dr. Babington's 2016 inability-to-sustain-work opinion because it was inconsistent with a March 2016 independent medical examination (IME) that "concluded that [Plaintiff] could return to work." Tr. 35. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042. Here, the March 2016 IME relied on by the ALJ is not of record. As to the March 2016 IME, Dr. Babington stated:

> I did look at the IME from 03/2016. At that time it was felt that from a psychiatric perspective, [Plaintiff] could return to work. I would defer an opinion on that to Dr. Berner, the patient's longstanding psychiatrist who is seeing him for many years through the course of this injury as to his opinion as to whether or not the patient is at maximum medical improvement or whether or not he has any mental health related impairments related to his work injury.

ORDER - 24

Tr. 1059.  It is unclear on this record whether Dr. Berner commented on the March 2016 psychiatric evaluation.  *See also* Tr. 100 (noting "[t]here is no [mental status examination] on file to assess [Plaintiff's] functional capacity."); Tr. 113-15 (Although finding that Plaintiff's affective disorders are severe, Dr. Eugene Kester found "[t]here [was] insufficient evidence to evaluate the claim.").  On this record, which contains neither the 2016 IME nor Dr. Berner's comments about the IME, it was not reasonable for the ALJ to discount Dr. Babington's opinion as inconsistent with the unexplained 2016 IME finding.

Finally, the ALJ discounted Dr. Babington's 2016 opinion because Dr. Babington deferred to Dr. Berner as to Plaintiff's psychiatric conditions.  Tr. 35 (citing Tr. 1057-59).  A medical provider's specialization is a relevant consideration in weighing medical opinion evidence.  20 C.F.R. § 404.1527(c)(5).  While the ALJ may give more weight to a specialist, it is error for the ALJ to reject a treating physician's opinions solely based on this reasoning.  *Sprague*, 812 F.2d at 1231 (recognizing that the treating physician was qualified to give a medical opinion as to the claimant's mental state despite not being a psychiatrist).  Here, the ALJ highlighted that Dr. Babington deferred to Dr. Berner.  Tr. 35-36, 1059.  As discussed *supra*, Dr. Babington's deference was consistent with Labor and Industries' policy.  Tr. 502-04; *see also* Tr. 906 (Dr. Beer deferred psychiatric medications to Dr. Berner); Tr. 920 (Dr. Fischer recommended that Plaintiff

continue under the care of psychiatrist Dr. Berner). Accordingly, on this record, simply because Dr. Babington deferred to Dr. Berner to assess whether Plaintiff was at "medical maximum improvement" and whether his mental-health impairments were related to his work injury—questions for the Labor and Industries' proceeding and not pointed to whether Plaintiff had functional limitations resulting from his psychiatric conditions—was not a legitimate reason to discount Dr. Berner's 2016 opinion, which was supported by his clinic notes (or summaries of such notes).

In summary, the ALJ erred in discounting Dr. Babington's 2016 opinion.

### iii.    2017 Opinion

The ALJ assigned weight to Dr. Babington's 2017 opinion that Plaintiff was able to perform sedentary work on a full-time basis. Tr. 35 (citing Tr. 1059). As discussed *supra*, the ALJ failed to appreciate that Dr. Babington's 2017 opinion distinguished between Plaintiff's physical and psychiatric conditions, and that his sedentary-work opinion addressed only Plaintiff's physical conditions and not his psychiatric conditions and resulting limitations.

The ALJ erred by discounting Dr. Babington's opinions as to Plaintiff's psychiatric limitations. On remand, after ordering and considering a consultative psychiatric evaluation and possibly receiving testimony from a psychiatric medical expert, the ALJ is to reweigh Dr. Babington's 2015, 2016, and 2017 opinions.

*2. Dr. Berner*

From 2012 to 2017, psychiatrist Dr. Berner treated Plaintiff and ultimately diagnosed Plaintiff with generalized anxiety and chronic pain syndrome. *See, e.g.*, Tr. 619-24, 906-10, 934-36, 952, 1061. Although Dr. Berner opined that Plaintiff's "pre-existing psychiatric illness is a barrier to re-employment," Tr. 934, the ALJ found that Dr. Berner "did not offer any specific opinion regarding functioning." Tr. 35. Dr. Berner also opined that Plaintiff was "'fixed and stable relative to the available formularies'" and his "pain complaints overshadow subtle psychiatric comorbidities." Tr. 35, 33.

The ALJ did not identify what weight he gave to Dr. Berner's opinions. Tr. 33-35. Based on the ALJ's analysis, it appears the ALJ gave weight to Dr. Berner's opinions—other than the opinion that Plaintiff's psychiatric illness was a barrier to re-employment, which was not discussed by the ALJ.

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012. Here, given Dr. Berner's observations and findings, along with the remaining record, the ALJ erred by failing to discuss Dr. Berner's opinion that Plaintiff's psychiatric illness was a barrier to employment. Dr. Berner's records indicate that Plaintiff's psychiatric conditions impacted him. *See, e.g.*, Tr. 935 (noting "speech pressure, decreased insight, mild suspiciousness

directed towards his case manager/rehabilitation specialists"); Tr. 936 (noting "[c]onversational with perhaps less speech pressure relative to previous meeting"); Tr. 938 (noting that Plaintiff "is tearful and with suicidal fantasy" and recommending to "take a break from further psychiatric treatment until his pain is more aggressively managed. In an ideal world, buprenorphine seems the treatment of choice but there are numerous administrative constraints); Tr. 954, 1061 (testing scores indicating severe anxiety).

On remand, the ALJ is to weigh Dr. Berner's opinions in light of the entire record. *See Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. When evaluating Dr. Berner's opinions, the ALJ is to consider that Dr. Berner's findings and opinions were issued for Labor and Industries' purposes and to be cognizant of the terms related to Labor and Industries' purposes, i.e. "maximum medical improvement" and "fixed and stable." In addition, the ALJ is to consider the reasons and context for why Dr. Berner recommended that Plaintiff visit him annually, including that Dr. Berner's treatment options were limited by Plaintiff's physical pain and Labor and Industries' approved treatment options. *See, e.g.*, Tr. 937 ("It is not entirely clear that ancillary psychological treatment has added efficacy relative to traditional vocational rehabilitation."); Tr. 938 (opining that psychiatric treatment would not be helpful until Plaintiff's pain was more aggressively managed); Tr. 952 (recognizing treatment restrictions were hindered

ORDER - 28

by whether treatment was "nonformulary"); Tr. 953 (opining that "further contact

puts [Plaintiff] at risk of iatrogenic injury in terms of medication adjustment.").

### 3. Dr. Bargreen

In October 2015, Dr. Bargreen conducted an initial psychological diagnostic

evaluation of Plaintiff for Labor and Industries' purposes.  Tr. 1047-52.  Dr.

Bargreen diagnosed Plaintiff with unspecified depressive disorder, other specified

anxiety disorder, cannabis use disorder (moderate), sedative induced disorder

(severe), unspecified personality disorder, back and leg pain, and primary

insomnia.  Tr. 1047.  Dr. Bargreen opined that Plaintiff's "constant isolation" and

emotional-regulation problems would be a "major barrier" to Plaintiff returning to

work.  Tr. 1049, 1051.  The ALJ assigned minimal weight to Dr. Bargreen's

opinion.  Tr. 36.

Because Dr. Bargreen's consultative-examination opinion was ordered for

Labor and Industries' purposes, it did not contain specific functional limitations

that would be contained in a consultative examination ordered for social-security-

disability purposes.  On remand, the ALJ is to order a psychiatric consultative

examination and reweigh the medical evidence, including Dr. Bargreen's opinion.

## B. Other Challenges

Plaintiff contends the ALJ failed to rely on 1) clear and convincing reasons

in discrediting his symptom claims and 2) germane reasons for discrediting Ms.

Bryan's lay statements.  ECF No. 15 at 16-19.  Because the analysis of these issues depends on the ALJ's evaluation of the medical evidence, the Court declines to address these challenges.  On remand, the ALJ is to consider the following.  First, if the ALJ discounts Plaintiff's reported psychiatric symptoms on the grounds that Plaintiff engaged in social and public activities, the ALJ must identify how the level of these activities is consistent with the ability to engage in sustained work activities, particularly the identified vocations that involve work indoors.  *See Trevizo*, 871 F.3d at 675-76; *Garrison*, 759 F.3d at 1016; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (recognizing that a claimant's ability to engage in activities that were sporadic or punctuated with rest, such as housework, occasional weekend trips, and some exercise, do not necessarily support a finding that she can engage in regular work activities).  Second, if the ALJ discounts Plaintiff's reported psychiatric symptoms because Plaintiff offered conflicting reports as to when his anxiety began, the ALJ must be mindful whether Plaintiff's conflicting reports were related to Plaintiff's psychiatric conditions.  *See, e.g.*, Tr. 900-04, 918, 934.  Third, if the ALJ discounts Plaintiff's psychiatric symptoms on the lack of frequent psychiatric treatment, the ALJ must consider whether Plaintiff's psychiatric conditions were expected to benefit from treatment and/or whether any reasons offered constitute good cause for failure to follow or seek treatment.  *See, e.g.*, Tr. 878, 903-06 (reporting side effects from medications and that Labor and

ORDER - 30

Industries would not pay for a psychologist); *see also Orn*, 495 F.3d at 638; *Holohan*, 246 F.3d at 1205. Fourth, if the ALJ discounts Plaintiff's psychiatric symptoms on the grounds that they resulted from situational stressors, the ALJ must assess whether Plaintiff's psychiatric conditions were caused by the situational events or whether the situational events were caused by the psychiatric conditions. *See, e.g.*, Tr. 843 (opining that "even absent the divorce, [Plaintiff] more probably than not would have developed a Major Depression episode given the nature of his injury, his multiple operations, and the significant change in his occupational course"); Tr. 878, 903 (noting that Plaintiff was depressed and that this was causing issues with his school performance and housing). Fifth, if the ALJ discounts Plaintiff's reported symptoms because of a strong disability conviction and because there was "no end game," the ALJ must consider the context in which these statements were made. Tr. 1053-54 (Dr. Tomski recognized that Plaintiff's work injury had reached maximum medical improvement and therefore there was no further treatment Dr. Tomski, rather than Dr. Babington, could offer to aid Plaintiff with his Labor and Industries' claim.); Tr. 1061 (notwithstanding Dr. Berner's comments under the "Subjective" heading of his

clinic notes, Dr. Berner found that Plaintiff suffered from severe anxiety and chronic pain syndrome).

**C. Remand**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 15 at 20.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague*, 812 F.2d at 1232. When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where 1) the record has been fully developed and further administrative proceedings would serve no useful purpose; 2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and 3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on

remand, the court will remand for an award of benefits. *Revels*, 874 F.3d at 668.

Even where the three prongs have been satisfied, the court will not remand for

immediate payment of benefits if "the record as a whole creates serious doubt that

a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, further proceedings are necessary. As discussed *supra*, the ALJ

improperly discounted the opinions of Dr. Babington and Dr. Berner. Dr.

Babington's and Dr. Berner's opinions are contradicted by the examining opinions

of Dr. Rebecca Fischer, Tr. 920, and Dr. Russell Vandenbelt, Tr. 844, who opined

that Plaintiff could work with no psychological restrictions, other than no driving

while medicated. Tr. 145-50, 163-65. The ALJ gave Dr. Fischer's opinion

significant weight, Tr. 36, but did not discuss Dr. Vandenbelt's opinion. Even if

the ALJ were to have fully credited Dr. Babington's and Dr. Berner's opinions, the

evidence would present an outstanding conflict for the ALJ to resolve in regard to

Plaintiff's ability to perform mental demands of sustained work, such as

understanding; remembering; maintaining concentration, persistence, or pace;

carrying out instructions; responding appropriately to supervision, co-workers, or

work pressures in a work setting; and interacting with supervisors, co-workers, and

the general public. Therefore, further proceedings are necessary for the ALJ to

resolve potential conflicts in the evidence. On remand, the ALJ is directed to order

a psychiatric consultative examination for social security purposes and possibly

obtain testimony from a psychiatric medical examiner, reevaluate the medical evidence, and conduct a new sequential analysis, including reconsidering Plaintiff's symptom testimony and Ms. Bryan's lay statements in light of the new analysis of the medical evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is neither supported by substantial evidence nor free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED July 10, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 34